JOSEPH M. HODGKINS & al. *versus* CHARLES H. DENNETT.

The bargainee agreed to pay a specified price for certain chattels then in his possession, belonging to the bargainor, and also to pay for certain supplies to be furnished in a lumbering operation, by cutting and hauling logs from certain lands of the bargainor at a stated price per M. feet, the bargainor "to retain entire ownership of the chattels until he received entire payment of the same." Upon a settlement of the lumbering operation, made by deducting the aggregate price of the chattels and supplies from that for cutting and hauling the lumber, a balance of $634 was found against the bargainor, which he paid. Subsequently it was discovered that the balance thus found and paid was $250 too much. In an action of replevin for the chattels brought by the bargainee's vendees against the bargainor's agent who had taken possession of them: — *Held,* that the

bargainor could not apply the amount of the error to the non-payment of the price of the chattels, and thereby retain ownership of them.

ON EXCEPTIONS.

REPLEVIN for certain horses, harnesses and other chattels, prior to Oct. 1862.

One Dwinel became the owner of the chattels replevied. When he acquired the title to them, they were in the possession of one Ingalls, where they remained until Dec. 30, 1864, when they were taken from his possession by the defendant as agent for Dwinel.

It appeared that, after the settlement of the lumbering operation, Dwinel attached the property replevied as Ingall's property; that Dwinel then told Ingalls he had paid for the property and it was his, in which Ingalls acquiesced; that Ingalls paid the debt sued, and the attachment was dissolved, and that subsequently the error was discovered.

It also appeared that Ingalls sold the property, Dec. 29, 1864, for a valuable consideration, to the plaintiff, who knew that Dwinel and Ingalls both claimed it.

The presiding Judge instructed the jury that, if before the sale to the plaintiffs, the mistake in scale of the logs had come to the knowledge of all the parties, and the plaintiffs knew of Dwinel's claim by reason of such mistake, they would be in no better condition than their vendor, Ingalls; and that Dwinel, under such circumstances, could apply the mistake toward the non-payment of the sum stipulated to be paid for the property.

The verdict was for the defendant, and the plaintiff alleged exceptions.

The remaining facts appear in the opinion.

*W. H. McCrillis*, for the plaintiffs.

*J. A. Peters*, for the defendant.

KENT, J. — Rufus Dwinel sold to Ingalls certain horses and harnesses and other articles, for six hundred dollars, " Dwinel to retain entire ownership of the same till he shall

receive entire payment for the same." The question was whether he had received his pay.

It appears that Dwinel had agreed with Ingalls to employ him to cut and haul logs and to pay him two dollars and fifty cents per M., and to furnish him with supplies. There was evidence tending to show that Ingalls was to pay for the supplies and the above property conditionally sold, by the cutting and hauling. The case further finds that the cutting and hauling did amount to more than the supplies, and that the parties settled and found, after charging Ingalls with the supplies, and the six hundred dollars for the horses and other property, that there was a balance of $634 due from Dwinel to Ingalls, which Dwinel paid to him.

There can be no possible question that, if there had been no mistake as to the amount cut and hauled, the property in question was fully paid for and the title became perfect in Ingalls. But, it appears that subsequently, after the property had been once attached as Ingalls', and his title recognized by Dwinel, it was discovered that a mistake had been made by the scaler, by whose return the settlement had been made, in adding his columns, and that just 100 M. feet too much had been credited to Ingalls. This amount, at the contract price, was $250. This deducted from the balance as settled and paid, ($634,) leaves $384 as the sum which should have been paid by Dwinel. He therefore paid $250 more than the true amount required.

But, in any view, the property had been paid for. For if the first account, as settled, had contained the correct credit of 17 — instead of 1800 M., there would still have been more than enough to pay for all the supplies and this personal property.

It is, however, contended that Dwinel, having paid not merely the $384, — which it is admitted he owed, but also $250 covered by the error in addition, he may apply the mistake as the non-payment of part of the sum stipulated to

be paid for the property, and that his lien, or rather his title to the property would remain. If this might have been so, provided the balance of the whole account, after correcting the error, would have been in Dwinel's favor, we cannot well see how this error of $250, can be carried back over the $384 and the settlement, and be applied specifically to the sale of the horses.

The property was to be vested in Ingalls at once and fully, when the cutting and hauling had been performed, and when on settlement it appeared that the work, at the price named, balanced or overpaid the bill for supplies and the six hundred dollars.

Whenever this state of things existed, and the balance was in favor of Ingalls, the relation of the parties changed. Dwinel became debtor to Ingalls to the amount of the balance, after paying for the supplies and this property. Every thing was adjusted and paid, except this balance. If Dwinel had never paid it, the property in the horses, &c., would of course have passed, for they had been paid for. Now how can the fact, that Dwinel, by mistake, then undiscovered, paid to Ingalls a larger balance than he owed him, affect the title to this property. It was the case of a man's paying his debt, and, in addition, a sum not legally due. This sum he may recover back from his creditor on proper proof of the mistake. But can he, in addition to this, revive a title to property, which had been paid for long before, or claim a lien on such property to secure this debt for money paid by mistake? Suppose that, instead of this mistake in addition, Dwinel had paid Ingalls in bank bills, and had given him two one hundred dollar bills, instead of one such bill as he intended. Could he have set up a continuing title in the horses, because he had made this mistake in paying his own debt?

The property having been once paid for, and this fact existing in full force, after all mistakes were corrected, we cannot see why the title was not perfected, or how this over-

payment by Dwinel, of his own. debt, can divest the title
thus acquired.                    *Exceptions sustained.*
                              *New. trial granted.*

APPLETON, C. J., DICKERSON, BARROWS and DANFORTH,
JJ., concurred.